## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **SHARON LYNN DAVIS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00030 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **TOWN OF TAZEWELL, VIRGINIA,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |
| | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, and Brittany M. Haddox, Strelka Law Office, Roanoke, Virginia, for Plaintiff; W. Bradford Stallard, Penn Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

The plaintiff, a former municipal employee, alleges gender-based wage discrimination and retaliation by her employer under Title VII. The plaintiff has not produced sufficient evidence to establish a genuine dispute of material fact as to each of the required elements of the her claims. Accordingly, I will grant the defendant employer's Motion for Summary Judgment.

## I.

The relevant facts are largely uncontested. The following facts taken from the summary judgment record are either undisputed or, where disputed, are presented in the light most favorable to the nonmoving party.

Plaintiff Sharon Davis was Treasurer of the Town of Tazewell, Virginia ("Town"), from February 2015 through July 2016. She possesses a bachelor's degree in human services, which had a curriculum like social work. Davis took accounting and law courses at a community college but did not receive a degree. She later became a certified public accountant but allowed her CPA license to lapse. Prior to becoming Treasurer for the Town, Davis had primarily worked as an accountant for various law firms and had no prior local government accounting experience.

In early 2015, Davis applied to be the Treasurer for the Town based on an advertisement in the newspaper. She would be replacing forty-year Town Treasurer Linda Griffith. Upon her retirement, Griffith's annual salary was approximately $45,000 per year, excluding her Virginia Retirement System ("VRS") employer contribution. Davis was interviewed by a three-person committee of Town employees, and then the Town Manager, Todd Day, called Davis on February 28, 2015.

During the phone call, Day offered Davis the Treasurer position at a starting salary of $36,750, which included a five-percent VRS contribution. Day explained that her salary was set based on her educational background, her bachelor's degree in human services rather than accounting or another relevant degree, the absence of any governmental accounting experience, and her general lack of local government

experience. The Treasurer position's salary range is set by the Town Council. Davis accepted the offer on the spot, and did not attempt to negotiate a higher salary. Davis was the best applicant in the pool, despite not meeting all of the criteria or being fully qualified.

Throughout Davis' employment with the Town, she reported directly to Day. Over the course of her employment as Treasurer, she received three pay raises. She first requested a raise in her salary within a month of starting and Day increased her salary to $40,000 a year.

Shortly after starting as Treasurer, Davis requested a work cell phone to contact department heads who preferred texting to answering calls on their phones. Day denied her request and informed Davis that the Treasurer had never had a work cell phone because it was an office job that did not require people to go out into the field, unlike the department heads who used Town-issued cell phones. Davis eventually admitted in an email to Day that she could not justify a Town-issued cell phone for herself, given the low rate of expected usage.[1] The position of Town Treasurer still does not include a Town-issued cell phone.

---

[1] Davis later testified that the cell phone issue reoccurred after the email to Day. Davis also testified that the only other department head not to have a Town-provided work cell phone was the EMS administrative person, who was also a woman, so the decision had to be discriminatory because she could not "think of any other reason why [Day] would do that." Pl.'s Memo. Opp'n Ex. 1, Davis Dep. 74, ECF No. 37-1. However, Davis conceded that Day's female executive assistant, Robin Brewster, had a Town-provided cell phone.

Davis received a second salary increase in July 2015, along with the rest of the Town employees, which increased her salary to $41,200 a year. Davis complained to other Town employees about her salary after learning the starting salary of a new department head — specifically, the Parks and Recreation Director, Travis Barbee, whom Davis identifies as her comparator.[2]

By way of comparison, Davis and Barbee were both department heads and reported directly to Day. Barbee's duties as Director of Parks and Recreation included managing all activities of "games, sports, local schools, communication, YMCA" and all recreation issues, whereas Davis primarily handled "bank reconciliation" and tax collection. Pl.'s Mem. Opp'n Ex. 2, Day Dep. 33, ECF No. 37-2; *id.* at Ex. 4, Regon Dep. 6–7, ECF No. 37-4. Furthermore, Day testified that the salary range for Director of Parks and Recreation, like the Treasurer position, had been determined by the Town Council. Thus, Day set a salary for both Barbee and Davis within those bounds, considering the salaries of the previous position holders, and weighing their qualifications.

In terms of contrasting factors, the Parks and Recreation Director position had been vacant and open for six months without a suitable candidate when Barbee

---

[2] Davis testified about a second male department head, but admitted that she did not know what his salary was during or after her employment with the Town. As such, I will rely upon the more thoroughly-briefed comparator, Barbee. Not long after Davis left the Town, Barbee resigned for unrelated reasons.

accepted the position without competition. In addition, Barbee had previously declined the Town's offer to be Director of Parks and Recreation, and negotiated his salary when he later accepted the Town's job offer. On the other hand, and as Davis has acknowledged in her deposition, she was competing against other applicants, overlapped with Griffith for the Treasurer position, and did not negotiate the starting salary when offered the position.

In terms of credentials, Barbee's resume states that he obtained a bachelor's degree in sports management, had completed significant work toward a master's degree in business management , and was working toward a master's degree in sports management at the time he was hired. Barbee's resume also listed current certifications as a parks and recreation professional, as well as a spa and pool operator. Barbee had also completed a university executive development program for recreation professionals. Finally, Barbee had five years of local government experience in recreation and had held positions as an athletics coordinator in Georgia, recreation supervisor (athletics) in North Carolina, and director of parks and recreation in Tennessee. Day testified that he had offered the position to Barbee based on his education, experience, and knowledge.

Day testified that he had confronted Davis when he learned from other department heads and Town employees about her complaints. During the conversation, she demanded another pay raise but did not specifically mention her

gender as the reason behind her complaint.[3]  In fact, Day testified that he did not

"remember the gender issue ever coming up period with Miss Davis."  Day Dep.

80:19-20, ECF No. 37-2.  Day refused to increase her salary at that time, and also

issued a verbal warning for failing to perform necessary work duties and

complaining about her salary to subordinates.  Def. Mem. in Supp. Summ. J. Ex. 1,

ECF No. 33-1 at 124 (May 19, 2016, entry to Davis' Consecutive Employee

Warning Report).

In June 2016, Davis informed Day that the federal government was

considering a proposal to set a new minimum exempt employee salary under the Fair

Labor Standards Act ("FLSA").  Day testified that when he learned exempt

employees would be required to earn a salary of $47,476 to remain exempt under

the FLSA, he confirmed that the Town could not afford the associated raises under

the proposed change to the FLSA.  Day sent out notification memoranda to three

employees stating that the Town would change their status from exempt to non-

exempt if the proposal became law, due to constraints in the Town budget.  Davis

was one of the recipients of the notification memoranda, along with a male and

another female employee.  The proposed change to the FLSA ultimately never

---

[3]  Instead, Davis' deposition testimony indicated that a fair amount of her ire about her Town salary and treatment was not just due to Barbee's salary, but that Day's female executive assistant, Robin Brewster, made more money than her even though Brewster did not have a bachelor's degree and did not supervise any Town employees.

became law, so Davis would not have changed from a salaried employee to an hourly, non-exempt employee if she had stayed with the Town.

Davis had her first and only performance review on June 20, 2016. Davis received generally "Satisfactory" and "Good" marks, but had a lower score on her "Interpersonal Relationships" and a written evaluation that she needed to "use [her] time wisely to emprove [sic] on the job performance" and to be "critical of yourself not others." Pl.'s Mem. Ex. 6, Employee Performance Appraisal, ECF No. 37-6 at 2. Although Davis signed off on the review, she later testified at her deposition that she tries not to criticize other people, and "didn't really know what [Day] was talking about" in his assessment. Davis Dep. 140, ECF No. 37-1.

Davis, along with other Town employees, received a pay raise in July 2016, with an increase to $42,024. Day testified that Barbee's salary increased to $48,195, and it was his only raise during his tenure as Director of Parks and Recreation with the Town. If Davis had become an hourly employee, she was set to be paid approximately $20.20 an hour so that her overall salary would not decrease. Rather, it would be increased due to her pay raise, and she would be compensated for any overtime work at the time-and-a-half rate. Davis admitted during her deposition that receiving overtime pay as an hourly employee "might have been good since [she] was working a lot." Davis Dep. 95, ECF No. 37-1.

Throughout the course of her employment as Treasurer, Davis engaged in volunteer work in the community. Davis testified that Day had prohibited her from performing volunteer work during working hours, although Davis claims that prohibition did not apply to male Town employees. Davis admitted she had been the only Town employee on the volunteer committee for the Town Sesquicentennial Celebration, and no additional evidence has been presented to support her assertion that Day's policy against volunteering during work hours did not apply to all other Town employees, male or female.

Throughout 2016, the Town interviewed various vendors to update the financial software used by the Treasurer's department. A few of the vendors were suggested by Davis, and she even requested presentations to her department's staff to ask any "questions that [she] might miss." Def. Mem in Supp. Summ. J. Ex. 1, ECF No. 33-1 at 85–86 (January 28, 2016, email from Davis to Day). On May 19, 2016, Day directed the Treasurer's department to coordinate with Robin Brewster, his executive assistant, and schedule times to meet with financial software vendors for presentations and eventually present a unanimous recommendation on a software program. In later emails that day between Brewster and the department, Davis stated that she could "make time any evening" to meet with representatives. *Id.* at 87. Brewster emailed the Treasurer's department and Day with the schedule of presentations, and these times included a July 19 presentation at 6:00 p.m.

Even though Day had previously prohibited Davis from doing volunteer work during working hours, Davis testified that she had left the July 19 presentation early to attend last-minute volunteer meetings for the sesquicentennial celebration. Davis admits that she neither notified nor requested permission from Day to leave the mandatory meeting early. The Town's Personnel Manual clearly states that employees must notify the Town Manager as far in advance as possible if they are unable to report to work, must obtain permission to leave during work hours, and will face disciplinary action up to and including termination for unauthorized or excessive absences or tardiness.

Instead, Davis testified that she had informed Robin Brewster, Day's executive assistant, that she needed to leave the presentation early and Davis was thus permitted to ask her questions first before leaving for her volunteer meeting. Davis testified that she had thought Brewster had authority to excuse her from the remainder of the mandatory software meeting, but claimed at other points in her testimony that Brewster had no supervisory authority and acknowledged Day was her direct manager.

Day testified that he had verbally reprimanded Davis the following day for leaving a mandatory meeting for a second time, not performing necessary work duties, and complaining about her salary to others. He also followed up with a notation in her Consecutive Employee Warning Report. Def. Mem. in Supp. Summ.

J. Ex. 1, ECF No. 33-1 at 124 (July 20, 2016, entry to Davis' Consecutive Employee Warning Report).  Day demoted Davis from Treasurer to Accounting Clerk during the conversation, and informed her that her former subordinate, Leeanne Billings Regon, would take over as Treasurer.  Davis requested two days of leave and left early that day to decide her next steps.  Davis cleaned out her office over that weekend, but took her personal possessions home rather than moving them to the Accounting Clerk area.  Davis formally resigned via a text message to Day on July 25, 2016.  Davis testified that she had resigned due to her demotion.

Under the Town's Disciplinary Procedure, a supervisor is advised to follow "progressive discipline."  Pl.'s Mem. Opp'n Ex. 9, Personnel Manual for the Town of Tazewell, ECF No. 37-9 at 27.  As this was Davis' second incident, Day could have issued a written reprimand, and warned her that a third incident would result in more severe disciplinary action.  Day testified that he had not followed this procedure for Davis, and the Personnel Manual notes that the policy is advisory and the Town "does retain the right to administer discipline in any manner it sees fit. . . . [and does not] restrict the Town's right to bypass the procedures suggested." *Id.* at 27.  In addition, Day testified that he had demoted employees on other occasions as a form of discipline.  Day Dep. 56, 58, ECF No. 37-2.

The Town's Personnel Manual contains a grievance procedure that covers various personnel actions, including "disciplinary demotions."  Personnel Manual,

ECF No. 37-9 at 26. It also details the various steps for grieving such a demotion. *See id.* at 29–31. Davis did not make use of this procedure. Instead, she met with a member of the Town Council, Jack Murray, to explain that she had been demoted and to get advice. According to Davis, Murray advised her to remain in her employment with the Town and promised to communicate with Day, but Davis never heard from Murray again.

Upon Davis' resignation, Regon, the former subordinate of Davis, was officially promoted and formally offered the position of Treasurer with a starting salary of $37,500 that included a VRS contribution. Regon testified that she had previously indicated interest in being Treasurer before Davis was interviewed for the position, but declined to apply at that time. Regon was an Accounting Clerk for eleven years before becoming Treasurer, and she had recently obtained a master's degree in human resource management. Regon did not have a CPA certification. Regon received a raise in July 2019, along with other Town employees, and her salary is currently $44,000.

Davis has worked in five different positions since she resigned from the Town, but not all of them involved accounting work. Davis was unemployed from January 2019 through mid-August 2019, but she has otherwise been able to find work. She was hired in late August 2019 to work as a computer representative in customer service.

II.

The court previously dismissed Counts III (Equal Pay Act discrimination), IV (Equal Pay Act retaliation), and V (42 U.S.C. § 1983 violation of liberty interest) of Davis' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Following the close of discovery, the Town has moved for summary judgment on the remaining Counts I (Title VII gender discrimination) and II (Title VII retaliation). The motion has been fully briefed and orally argued and is ripe for decision.

The Town argues Davis has not presented evidence that she was discriminated against because of her gender or was retaliated against for her complaints about gender-based wage discrimination, and that no reasonable jury could find in her favor. The Town asserts that there is ample evidence Davis was demoted due to her unsatisfactory work performance and strained interpersonal relationships with other Town employees, and that she chose to resign rather than commence the grievance procedure. Davis contends that there remains a genuine dispute of material facts that precludes summary judgment. She relies primarily on her own deposition testimony.[4]

---

[4] For example, Davis testified in her deposition that Day had been aggressive toward her after her repeated complaints about her salary; however, the examples were generally limited to him raising his voice with her at various points. Davis also testified that during one meeting in his office Day had brandished a hunting knife in her presence, although not in her direction and still in the sheath, in order to intimidate her. Day admitted he has hunting knives in his office, but testified that he had never been physically threatening toward Davis. Moreover, Regon testified that she had never witnessed any

III.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The substantive law applicable to the case determines which facts are material. *Anderson,* 477 U.S. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.[5]

---

such behavior nor heard Davis complain about Day's behavior toward her. Finally, Davis testified that Day's refusal to grant her a Town-provided cell phone could only have been based on gender animus as she understood that the only two department heads without Town cell phones were female. Yet she also testified that Brewster had a Town-provided cell phone and, at least initially, acknowledged the legitimacy of the Town's proffered reason that the Treasurer and EMS positions were desk jobs and did not require going out in the field.

[5] I have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986). If the moving party makes that showing, the nonmoving party must then produce admissible evidence — not mere allegations or denials — establishing the specific material facts genuinely in dispute. Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wilkins v. Montgomery*, 751 F.3d 214, 220 (4th Cir. 2014).

The Rules of Evidence apply in connection with summary judgment practice. *See* Fed. R. Civ. P. 56(c)(4) (additional discussion in advisory committee notes to 2010 amendment). Consequently, the court may not consider inadmissible evidence in connection with summary judgment motions. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (holding that court correctly found statements in affidavit to be hearsay, irrelevant, or conclusory, and properly struck those sections pursuant to Rule 56(c)(4)). The court does not weigh evidence, consider credibility, or resolve disputed issues — it decides only whether the record reveals a genuine dispute of material fact. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

There are two key disputes between the parties. First is whether Day set Davis' salary based on her gender or based on legitimate, nondiscriminatory criteria. Second is whether Davis was demoted due to her complaints about her salary being

based on her gender or due to her poor work performance and strained interpersonal relationships with other Town employees.

*A. Title VII Gender Discrimination.*

Title VII prohibits an employer from discriminating against an employee because of sex, including with respect to compensation. 42 U.S.C. § 20003-2(a)(1). Title VII requires establishing intentional discrimination through one of two mechanisms. A plaintiff can either produce direct or circumstantial evidence of discrimination, or utilize the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "to develop an inferential case of discriminatory intent." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019).

The *McDonnell Douglas* burden-shifting framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden then shifts to the employer to articulate a legitimate and non-discriminatory or non-retaliatory reason for the adverse action; and finally (3) the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and the true reason is discriminatory or retaliatory. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

Under *McDonnell Douglas*, to establish a prima facie case of gender-based wage discrimination, a plaintiff must show: (1) membership in a protected class; (2)

satisfactory job performance; (3) an adverse employment action; and (4) circumstances that suggest an unlawfully discriminatory motive. *Spencer*, 919 F.3d at 207; *see also Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1227 (4th Cir. 1998) ("Under Title VII, the plaintiff bears the initial burden of proving a prima facie case of discrimination by raising an inference that the defendant acted with discriminatory intent.").

On the last prong, there is a strong inference that discrimination was not a "determining factor" for the adverse action "where the hirer and firer are the same individual and the termination of employment occur within a relatively short time span following the hiring." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991). There is insufficient information in the record as to whether Day hired Davis or simply communicated the three-person committee's decision, and therefore I will view the evidence in the light most favorable to Davis and accept that the committee hired her and not apply the *Proud* inference.

While "but for" causation is required for retaliation claims, in gender-discrimination claims the plaintiff must merely "show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

As detailed below, Davis has not established a genuine issue of material fact on each of the Title VII factors to demonstrate a prima facie case of gender-based wage discrimination. Consequently, I will not address the Town's asserted legitimate, non-discriminatory reasons for demoting her or the pretext question.

1. Protected Class.

Davis is a woman, and the Town does not contest that she is therefore a member of a protected class.

2. Satisfactory Job Performance.

The focus of this prong is not whether Davis was qualified for the job at the time of hiring, but whether her job performance met the employer's "legitimate expectations." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006). As these expectations are inherently subjective, and the burden of proving the prima facie case falls on the plaintiff, the court must consider the "employer's evidence that the employee was not meeting those expectations." *Jones v. Constellation Energy Projects & Servs. Group, Inc.*, 629 F. App'x. 466, 469 (4th Cir. 2015) (unpublished); *see also Nigro v. Va. Commonwealth Univ. Med. Coll. of Va.*, 492 F. App'x. 347, 360 (4th Cir. 2012) (unpublished) (affirming grant of summary judgment and holding that employee could not demonstrate that her performance was satisfactory because there was "ample evidence" that she was lagging behind her peers, and her average ratings were to get her out of some rotations while other

rotations rated her performance as deficient).  Nevertheless, the court should not impermissibly credit the employer's evidence and fail to properly acknowledge key evidence offered by the employee, particularly when there is a clear dispute in the record.  *Jacobs v. N.C. Admin. Office of Cts.*, 780 F.3d 562, 570 (4th Cir. 2015).

Davis has claimed throughout her suit that she was an excellent Treasurer, and points to her performance review where she received a rating of generally satisfactory.  But her self-assessment is not enough to sustain her claim.  *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (affirming grant of summary judgment, and holding that satisfactory performance based on legitimate expectations depends on the "perception of the decision maker . . . not the self-assessment of the plaintiff.").

Despite her overall satisfactory score, Davis received a lower score for "Interpersonal Relationships," and there was written commentary relating to her poor time management and advising her to be less critical of others.  These notations in her personnel file correspond with Day's testimony concerning his reasons for demoting Davis, as do the two Consecutive Employee Warning Report entries in her personnel file.  Although the entries noted her complaints about salary, they also listed failure to perform necessary work duties.

Day also testified about Davis' other performance issues, such as the hurdles she faced due to her lack of prior local government experience, her failure to stay on

schedule and provide necessary documents to outside accountants during the Town audit, interpersonal difficulties with other department heads and the public, and leaving the office frequently and without permission to work on volunteer activities. Day testified that the demotion had been intended to be a "wakeup call" when Davis missed a second mandatory meeting to work on volunteer matters during work hours, so that she would take her position more seriously. Day Dep. 83–84, ECF No. 37-2.

Day's testimony regarding Davis' poor performance and his assessment about whether she met his and the Town's "legitimate expectations" eliminate any genuine dispute as to this prong, and the Town is entitled to judgment as a matter of law on this point. The facts here are unlike those in *Jacobs* because there is consistent evidence that corroborates Day's testimony, such as the notations of Davis's infractions in her personnel file and the written notes in her annual performance evaluation. *See Jacobs*, 780 F.3d at 570 (holding that the employer's reasons appeared to be post hoc rationalizations as the plaintiff had never been written up for a disciplinary infraction, never received a negative performance review, nor had notes in her personnel file indicating any problems with her performance). Davis' pay increases might indicate that her performance was satisfactory, but Day testified that she received pay raises outside the Town's schedule due to her frequent complaints — he testified that they had as many as fifteen conversations — and that

he worked with Davis "significantly more than any other employee" to gradually raise her salary. Day Dep. 43, ECF No. 37-2.

### 3. Adverse Employment Action.

The third prong of a prima facie case under *McDonnell Douglas* requires Davis to demonstrate that the employer took an adverse employment action against her. An adverse employment action includes, but does not require, termination, and "denotes some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015). Thus, Davis must show "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

In attempting to establish an adverse employment action, Davis asserts that Day constructively discharged her by demoting her from Treasurer to Accounting Clerk. To establish a constructive discharge claim, Davis' evidence must show that she was "discriminated against by her employer to the point where a reasonable person would have felt compelled to resign and that she actually resigned." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019). *But see Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993) (reversing grant of summary judgment and holding that the employer did not deliberately create intolerable conditions to force employee

to resign where "deliberateness" can be proven by actual or circumstantial evidence). The conditions must be beyond "ordinary discrimination" to warrant the employee not remaining on the job while seeking redress. *Evans*, 936 F.3d at 193. Intolerability is viewed from an objectively reasonable person standard, asking whether a reasonable person in the employee's position "have felt *compelled* to resign" or felt that she "would have had *no choice* but to resign." *Id.*

The Fourth Circuit in *Carter v. Ball*, 33 F.3d 450, 459-60 (4th Cir. 1994), held that unfair criticism and loss of supervisory responsibility was not enough to establish constructive discharge. But where demotion is essentially "career-ending" or "a harbinger of dismissal," then it can constitute constructive discharge. *Id.* at 459. A demotion also might constitute an adverse employment action where there is a decrease in compensation, job title, or level of responsibility. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376, 378 (4th Cir. 2004) (holding that "a slight decrease in pay coupled with some loss of supervisory responsibilities is insufficient evidence of constructive discharge").

The parties contest whether Davis was constructively discharged due to the circumstances of her demotion. I find that Davis has established a genuine issue of material fact as to whether she was constructively discharged due to the removal of her title and supervisory role, as well as her replacement by a subordinate. Day acknowledged in his deposition that the demotion would have removed Davis from

her position as Treasurer, so she would have had less responsibility and reduced supervisory authority. There remains a genuine issue of material fact as to whether the demotion was permanent and whether she would have also experienced a reduction in pay.

Day claims the demotion was meant to be a "wakeup call," so that Davis would take her position more seriously, and he testified that "bringing her back into that position was a possibility" if she took the job more seriously after her demotion. Day Dep. 83–84, ECF No. 37-2. While there is a possibility that Davis could have returned to her supervisory position if she had not resigned, there is no evidence that this understanding or disciplinary goal was communicated to Davis before she resigned. As for the potential reduction in pay, Davis testified that Day told her that there would be a "pay cut." Davis Dep. 132, ECF No. 37-1. On the other hand, Day testified that while Davis' position would have had reduced responsibility if she had not resigned, no decision had been made as to whether her pay would change. Overall, given the other aspects of her demotion, Davis has presented a genuine dispute of material fact and a reasonable trier of fact could find that Davis' proposed demotion was a constructive discharge.

### 4. Similarly Situated.

Davis' deficient evidence as to the satisfactory performance element is enough to find against the plaintiff as a matter of law, and I need not complete an

exhaustive analysis as to the fourth element of the prima facie case. Even so, I find that Davis also failed to establish the "similarly-situated" prong of the prima facie case. Where the prima facie case of wage discrimination "is based on comparators, the plaintiff must show that she [was] paid less than men in similar jobs." *Spencer*, 919 F.3d at 207. Unlike the Equal Pay Act, Title VII only requires that the compared jobs be "similar" rather than "equal." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994).

Under Title VII, courts consider whether the employees: (1) "held the same job description," (2) "were subject to the same standards," (3) "were subordinate to the same supervisor," and (4) "had comparable experience, education, and other qualifications — provided the employer considered these factors in making the personnel decision." *Spencer*, 919 F.3d at 207. The "plaintiff must [also] provide evidence that the proposed comparators are not just similar in *some* respects . . . [but] *in all respects*." *Id.*; *see also Sanders v. Tikras Tech. Solutions Corp.*, 725 F. App'x. 228, 230 (4th Cir. 2018) (unpublished) (finding that plaintiff's replacement, while outside her protected class, had "more than twice the experience that [she] had, and the two were therefore not similarly situated").

Davis selected Barbee, the former Director of Parks and Recreation, as her comparator. Although Davis referred to another male Town employee, no information has been provided as to that individual's background or salary. While

the Director of Parks and Recreation and Treasurer are both department head positions within the Town and report directly to Day, the duties and supervisory roles of the positions are very different. The former requires more coordination with other municipal employees and a larger geographic area of supervision. The latter takes "care of the financial accounting and treasury of the Town of Tazewell on a daily basis," and includes "day-to-day" supervision of "three to four employees." Day Dep. 33, 62, ECF No. 37-2.

In addition, Davis and Barbee have entirely different qualifications. Davis has a bachelor's degree in a non-relevant area, a lapsed CPA certification, and no local government accounting experience. Barbee has a bachelor's degree in a relevant area, sports management, and had completed significant work toward two separate master's degrees in business and sports management. Furthermore, Barbee had active and relevant certifications, and had completed a professional development program relevant to the field. Finally, Barbee had five years of relevant local government experience in recreation in contrast to Davis's lack of both general local government experience and local government accounting experience.

According to Day's testimony, he considers an applicant's education, experience, and knowledge when making a job offer and later setting their salary within the framework prearranged by the Town Council. Davis admitted that Day noted her lack of experience in explaining the offered salary, and that she "didn't

feel like [she] could negotiate" without losing the job offer. Davis Dep. 58, ECF No. 37-1. Barbee's salary was influenced by his efforts to negotiate his salary, but that is not impermissible and negotiating a salary is common practice.

Even though Davis has established that Barbee and she were both subordinate to Day, there is no genuine dispute of material fact that they do not have comparable qualifications and thus are not "similarly-situated" as a matter of law. *See Spencer*, 919 F.3d at 207; *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004) (affirming grant of summary judgment on Title VII gender discrimination claim for failure to hire, where eventual male hire was better qualified due to his advanced degrees in the relevant field and high-level relevant work experience).

It is also noteworthy that Regon, the subordinate who replaced Davis as Treasurer, is a female and was a long-time Accounting Clerk who had recently finished her master's degree in human resources. Regon's starting salary was close to Davis', but her salary has increased in the more than three years she has remained as Treasurer for the Town. This evidence, in conjunction with the fact that Davis replaced a long-time female Treasurer, Griffith, and that Davis was paid more than at least some male Town employees, undermines Davis' claim of gender discrimination.

Overall, Davis has failed to produce sufficient evidence to establish a prima facie case that she performed her job satisfactorily or that she was treated differently

than similarly-situated male employees. While a reasonable jury could find that she suffered an adverse employment action based on the circumstances of her demotion, that is ultimately inconsequential because she has failed to establish the remaining elements of a prima facie case of gender discrimination. Therefore, I need not determine whether the Town has proffered a legitimate, non-discriminatory reason for Davis' salary and demotion, and the Town is entitled to judgment as a matter of law on the Title VII gender-based wage discrimination claim.

### B. Title VII Retaliation.

"Title VII prohibits an employer from retaliating against an employee for opposing discriminatory practices in the workplace." *Evans*, 936 F.3d at 194. The "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 67 (2006) (finding that the Title VII retaliation provision contains a materiality requirement and employs an objective standard).

To establish a prima facie case of retaliation, a plaintiff must show that: (1) "she engaged in a protected activity," (2) "the employer took a materially adverse employment action against her," and (3) "there is a causal connection between the protected activity and the adverse action." *Evans*, 936 F.3d at 195. Once again, even viewing the evidence in the light most favorable to Davis, she has not established a prima facie case as to her retaliation claim.

1. Protected Activity.

Under the first prong, "an employee is protected when she opposes not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc). The Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015).

Davis did not have to explicitly detail her issues or formally present her alleged concerns about gender discrimination to Day. *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (finding that the plaintiff engaged in protected activity where she "twice complain[ed] of harassment" even though she did not detail the incidents nor explicitly describe the harassment as sexual). However, she has produced no evidence that "any untoward behavior or comments" by Day were reflective of gender discrimination; thus, her "subjective belief that [Day] was acting with discriminatory intent [is] not objectively reasonable." *Sanders*, 725 Fed. App'x. at 230 (noting that while the record demonstrated that the plaintiff's supervisor had "some animosity toward her, there [was] no evidence that indicate[d]

any such animus was a result of [her] race or gender," and thus his actions in transferring her did not support a Title VII claim).

Davis' complaints regarding her desire for a work cell phone and Day's refusal to permit her to work on volunteer matters during work hours amount to non-actionable general workplace grievances. She received several salary increases after complaining that other Town employees, including Day's female executive assistant, made more money than her. Davis has not sufficiently established that she connected her salary conversations with Day to gender discrimination, nor do her allegations lead to the inference that the Town and Day would have understood her complaints to be about perceived unlawful employment practices.

As previously discussed, Day testified that he did not "remember the gender issue ever coming up period with Miss Davis," Day Dep. 80, ECF No. 37-2, and Davis's testimony varied on the topic. *See Jones v. N.Y.C. Health & Hosp. Corp.*, No. 00 Civ. 7002, 2003 WL 30412 (S.D.N.Y. Jan. 3, 2003) (finding that employee did not make out a prima facie case of retaliation where she complained about salary repeatedly, but never suggested the low salary was a function of her gender until her EEOC post-termination complaint).

Furthermore, Day testified it was the frequency of her salary complaints to him and other Town employees, including other department heads, that created the tension and only part of his basis for disciplining her before the eventual demotion.

Day specifically stated "[h]er level, her altitude of complaining was very excessive. It had begun to demoralize personnel. It had begun to create conflicts in the day-to-day operations across all employees" and that he would "much rather her complain uphill." Day Dep. 85, ECF No. 37-2. As for the May 2016 warning report entry, Day testified that "some of [Davis's] activities left a little bit to be desired" and gave as an example that she "was trying to recruit [other department heads] to jump on board to take some kind of corrective action again [him]" when he decided to change Davis and two other employees from salaried employees to hourly employees due to the proposed changes in the FLSA. Day Dep. 86–87, ECF No. 37-2. Day testified he "had a lot of people that were informing [him] that she was trying to recruit them to jump on board with complaints," which even included attempts by Davis to recruit Barbee "as an ally in her venture or whatever it would be." Day Dep. 87.

The Fourth Circuit recently held that such complaints do not amount to protected activity. *Parker v. Ciena Corp.*, No. 19-1144, 2019 WL 4733403, at *2 (4th Cir. Sept. 27, 2019) (unpublished) (affirming a Rule 12(b)(6) dismissal of 42 U.S.C. § 1981 race discrimination and retaliation case because the plaintiff's "general workplace grievances regarding lack of resources" and the manager's "rude treatment" did not include complaints of discrimination nor warrant an inference that the defendants "would have understood his complaint to be about unlawful employment practices."); *see also Barot v. Embassy of Repub. of Zambia*, 299 F.

Supp. 3d 160, 188 (D.D.C. 2018) (noting that Title VII does not protect every informal complaint, and the complaint must allege unlawful discrimination rather than general complaints about salary or frustrated ambitions). Davis's general complaints do not constitute protected activity, and she has failed to establish this first prong as a matter of law.

2. Adverse Employment Action.

As previously discussed, Davis has presented a genuine dispute of material fact as to whether her demotion qualifies as an adverse employment action. As with her gender-based discrimination claim, I find that the evidence on this point applies to the retaliation claim's prima facie prong as well.

Davis appears to portray her proposed change to non-exempt status as further evidence of both retaliation and that she was "treated differently and unfairly." Davis Dep. 104, ECF No. 37-1. She testified that the proposed change was discriminatory and retaliatory because Day "made [her] hourly instead of bringing [her] up to the [exempt salary]" so "he wouldn't have to raise [her] salary," which she thought went against the purpose of the proposed change to the law. Davis. Dep. 104, ECF No. 37-1. But the two other employees who also faced a potential change to non-exempt status were a man and a woman, and Davis never claimed in her deposition that the change was based on her gender or her salary complaints; she merely testified that Day's decision went against the "purpose of the law." Davis

Dep. 103, ECF No. 37-1. In addition, Davis ignores the fact that she received a raise at the same time and that being entitled to overtime pay would have helped her due to her long hours. Even though Davis' allegations stemming from her proposed change to non-exempt status under FLSA are likely insufficient to establish the adverse employment action prong, Davis has nonetheless established a genuine issue based on the circumstances of her demotion.

### 3. Causal Link.

Title VII retaliation claims must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation "would not have occurred in the absence of" the alleged wrongful action or actions of the employer. *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (finding that *Nassar* applies only to cases with direct evidence of retaliation and not to cases employing the *McDonnell Douglas* burden-shifting framework at the prima facie case stage, because "the pretext framework already requires plaintiffs to prove retaliation was the actual reason for the challenged employment action.").

The burden is only to show "that the protected activity was a but-for cause of her termination, not that it was the sole cause." *Guessous*, 828 F.3d at 218; *see also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014) ("[I]n retaliation cases, courts must determine what made the employer fire the employee *when it did*."). *But see Spencer*, 919 F.3d at 208 (holding that the plaintiff did not

offer enough evidence that the alleged retaliatory actions were material "and undertaken *because* of her complaints about salary equity."). The discharge of an employee soon after she engages in the protected activity is "strongly suggestive of retaliatory motive and thus indirect proof of causation." *Carter*, 33 F.3d at 460.

"Workers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of insubordination or poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (finding that evidence demonstrated plaintiff's reprimand was due to abusing sick leave rather than reports of sexual harassment).

Given the frequency and extended duration of Davis' salary complaints over the sixteen months of her employment, as well as her varied unsatisfactory performance and failed attempts to recruit other Town employees to complain about Day to the Town Council, Day had numerous legitimate opportunities and grounds to demote or terminate her. Davis offers no explanation why Day, allegedly motivated by gender-based animus waited to demote her when he did. In addition, the short period of time between Davis leaving the mandatory meeting without permission and the two Consecutive Employee Warnings further weakens Davis' argument that retaliation was the real reason for her demotion. Davis has not established a genuine dispute of material fact as to the causation element. While the lack of sufficient evidence as to the protected activity prong justifies finding against

the plaintiff as a matter of law, Davis has also failed to establish that her salary complaints were a but-for cause of her demotion.

### 4. Legitimate, Non-Retaliatory Reason.

Even if I found that Davis had established a prima facie case of retaliation, the Town has presented evidence demonstrating that Davis was demoted for her unexcused absences to work on volunteer projects and her interpersonal difficulties with other Town employees. This is a legitimate, non-retaliatory reason. The Fourth Circuit noted in *Ziskie* that "harassment due to personality conflicts will not suffice." 547 F.3d at 226 (holding that plaintiff's abuse of sick leave to the detriment of her co-workers and her negative attitude, rather than her gender, was the likely impetus behind the harassment).

Day testified that Davis's demotion was the result of her missing mandatory meetings, not completing necessary work due to her recurrent absences to volunteer, and her complaints about her salary to other employees that led to a demoralizing atmosphere. Day also noted Davis made notable performance mistakes, specifically that "there were some auditing issues that the auditor brought up at the end of the year that reflected some understandable deficiencies. There were some communication issues that [he] recall[ed] with other department heads." Day Dep. 46, ECF No. 37-2; *see also id.* at 47 (noting that "her communication left quite a bit to be desired" but he did not write her up because she was new to local government).

Day testified that he even got complaints from the public about Davis and how she handled her position as Treasurer. For example, Day testified that he received a call from the Town's bank about a "confrontation" Davis had with one of the bank employees. *Id*. at 75. Day testified that his impression of the relayed encounter was that Davis "felt like her position as treasurer should have been respected a little more within that bank, and she should be exempt from having to take bank protocol steps" to add her name to the signature card for the Town's bank account. *Id*. at 75–76. Although the court cannot consider such hearsay statements for the truth of the matter asserted or weigh credibility, it would have been reasonable for Day to rely on such complaints in making disciplinary decisions. *Washington v. Washington Metro. Area Trans. Auth.*, 330 F. Supp. 3d 232, 241 (D.D.C. 2018) ("In many situations, employers must decide disputes based on credibility assessments, circumstantial evidence, and incomplete information.")

It is possible that Day harbored some personal animus toward Davis, but "a personal conflict alone does not constitute retaliation." *Spencer*, 919 F.3d at 207; *cf. Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) ("But Hawkins presents no facts that tend to show this allegedly disparate treatment was due to race rather than Price's admittedly low regard for Hawkins' individual performance."). The Town's stated reasons for demoting Davis are amply supported by evidence in the record, including but not limited to her personnel file, and Davis has offered no

evidence disputing Day's concerns. The plaintiff failed to establish each of the elements of a prima facie case, so the court need not discuss the pretext prong in depth. I nonetheless note that Davis has produced no evidence tending to show that Day's stated reasons for demoting her were pretextual.

Ultimately, Davis' "own naked opinion without more" and her "conclusory allegations" that Day's motivation is "in dispute are not enough to withstand summary judgment." *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1998) (holding that discharged employee's unsupported opinion that he was discharged on basis of age was not enough to establish genuine issue of material fact and warranted summary judgment in favor of the employer). As such, the Town is also entitled to judgment as a matter of law on the Title VII retaliation claim.

IV.

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment, ECF No. 32, is GRANTED. A separate final judgment will enter herewith.

ENTER: October 25, 2019

/s/ JAMES P. JONES
United States District Judge